**Sherrie E. GILFOR, Individually and as p/n/g for Nicholas Evan Gilfor, a Minor, Appellant,**

v.

**Brian ALTMAN, M.D., and Brian Altman, M.D., P.C.F.A.C., and Abington Surgical Center, Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 9, 2001.

Filed March 5, 2001.

Reargument Denied April 30, 2001.

Philip A. Yamplosky, Bala Cynwyd, for appellant.

Sheila Haren, Philadelphia, for appellee.

Before STEVENS, MONTEMURO * and BECK, JJ.

STEVENS, J.:

¶ 1 This is an appeal from the order entered in the Court of Common Pleas of Philadelphia County sustaining Appellees' preliminary objection and transferring venue of the underlying medical malpractice claim from Philadelphia County to Montgomery County. On appeal, Appellant Sherrie E. Gilfor contends that the trial court erred in transferring venue pursuant to Pennsylvania Rules of Civil Procedure 1006 and 2179. We affirm.

¶ 2 In July of 1997, Sherrie E. Gilfor, a resident of Philadelphia County, noticed that her one-year-old son's, Nicholas', left eye was "turning in." Nicholas' pediatrician referred Nicholas to Brian Altman, M.D., a specialist in pediatric ophthalmology, and, on September 17, 1997, Dr. Altman performed surgery on Nicholas' left eye at the Abington Surgical Center (Abington) in Montgomery County. At the time of the surgery, Nicholas was suffering from a chronic ear infection.

---

* Retired Justice Assigned to the Superior Court.

¶ 3 Immediately after the surgery, Nicholas' left eye became red, was difficult to keep open, and appeared to be smaller than Nicholas' right eye. On September 23, 1997, Dr. Altman examined Nicholas and prescribed ointment, which was to be applied to Nicholas' left eye. On September 25, 1997, Ms. Gilfor requested that Dr. Altman examine Nicholas immediately, but Dr. Altman indicated that he could not see Nicholas until September 30, 1997. As such, on September 25, 1997, Ms. Gilfor took Nicholas to the Wills Eye Hospital in Philadelphia, where it was determined that portions of Nicholas' left eye needed to be removed. As a result, Nicholas suffers permanent blindness in his left eye and displays facial deformities.

¶ 4 On October 28, 1999, Ms. Gilfor, individually and as parent of Nicholas, filed a complaint in the Court of Common Pleas of Philadelphia County alleging that Dr. Altman, Brian Altman, P.C., and Abington (collectively Appellees) were negligent with regard to the treatment of Nicholas' left eye. On November 18, 1999, Appellees filed preliminary objections seeking the transfer of venue to Montgomery County. Specifically, Appellees contended that this matter should be transferred to Montgomery County pursuant to Pa.R.C.P. 1006(a) and Pa.R.C.P. 2179(a). The trial court granted the preliminary objection, thereby transferring venue to Montgomery County, and this timely appeal followed.[1] The trial court ordered Ms. Gilfor to file a Statement pursuant to Pa.R.A.P.1925(b), such a statement was filed, and the trial court filed an opinion.

¶ 5 In the case *sub judice*, Ms. Gilfor sued one individual (Dr. Altman) and two corporations (Brian Altman, P.C., and Abington).[2] Pursuant to Pa.R.C.P. 1006(c), the trial court concluded that venue could be brought in any county in which venue lies against any one of the defendants. After analyzing Pa.R.C.P. 1006(a), (b), and Pa.R.C.P. 2179, the trial court held that venue did not lie as to any of the defendants in Philadelphia County, but that venue properly lies in Montgomery County as to all of the defendants. Ms. Gilfor agrees that, under Pa.R.C.P. 1006(c), venue could be brought in any county in which venue lies against any one of the defendants; however, she disagrees that the facts of this case demand that venue must lie in Montgomery county pursuant to Pa.R.C.P. 1006(a), (b), and Pa. R.C.P. 2179.

A plaintiff's choice of forum is given great weight and a defendant has the burden in asserting a challenge to the plaintiff's choice of venue. However, the trial court is vested with discretion in determining whether ... to grant a petition to transfer venue. We will not overturn the trial court's decision absent an abuse of that discretion. If there exists any proper basis for the trial court's decision to grant the petition to transfer venue, the decision must stand.

*Masel v. Glassman*, 456 Pa.Super. 41, 689 A.2d 314, 316 (1997) (citations, quotation, and quotation marks omitted).

¶ 6 Pennsylvania Rule of Civil Procedure 1006 provides, in relevant part, the following:

---

**1.** We note that Pa.R.A.P. 311(c) provides that "[a]n appeal may be taken as of right from an order in a civil action or proceeding changing venue, transferring the matter to another court of coordinate jurisdiction, or declining to proceed in a matter on the basis of forum *non conveniens* or analogous principles."

**2.** We note that Ms. Gilfor has raised no argument concerning Abington. That is, she does not discuss why venue in Philadelphia County is proper as to Abington, except to note that, under Pa.R.C.P. 1006(c), if venue lies against Dr. Altman individually or his corporation in Philadelphia County, then venue in Philadelphia County is proper as to Abington.

(a) Except as otherwise provided by Subdivision (b) and (c) of this rule, an action against an individual may be brought in and only in a county in which the individual may be served or in which the cause of action arose or where a transaction or occurrence took place out of which the cause of action arose or in any other county authorized by law.

(b) Actions against the following defendant, except as otherwise provided in Subdivision (c), may be brought in and only in the counties designated by the following rules ... corporations and similar entities, Rule 2179.

(c) An action to enforce a joint or joint and several liability against two or more defendants, except in which the Commonwealth is a party defendant, may be brought against all defendants in any county in which the venue may be laid against any one of the defendants under the general rules of Subdivisions (a) or (b).

Pa.R.C.P. 1006(a),(b), (c), 42 Pa.C.S.A.

¶ 7 Pennsylvania Rule of Civil Procedure 2179 provides, in relevant part:

(a) Except as otherwise provided by an Act of Assembly or by subdivision (b) of this rule, a personal action against a corporation or similar entity may be brought in and only in

(1) the county where its registered office or principal place of business is located:

(2) a county where it regularly conducts business;

(3) the county where the cause of action arose; or

(4) a county where a transaction or occurrence took place out of which the cause of action arose.

Pa.R.C.P. 2179(a), 42 Pa.C.S.A.

¶ 8 We agree with the trial court that the action at issue involved a joint/joint and several liability against the defendants, and, therefore, under Pa.R.C.P. 1006(c), the action could be brought in any county in which venue lies against any one of the defendants. We further agree that, pursuant to Pa.R.C.P. 1006(a) and 2179, the action at issue could not have been brought against any of the defendants in Philadelphia County, but could be brought against the defendants in Montgomery County.

¶ 9 With regard to Dr. Altman, individually, venue lies only in the county where he could be served or where the "cause of action arose or where a transaction or occurrence took place out of which the cause of action arose or in any other county authorized by law." Pa.R.C.P. 1006(a). Generally, an individual may be properly served in any county where he resides or at any office or place of business. Pa.R.C.P. 402.[3]

¶ 10 Here, Ms. Gilfor does not contest that the cause of action occurred in Montgomery County as that is where Nicholas' surgery and treatment took place. She also does not contest that Dr. Altman's residence and office are not located in

---

**3.** Pa.R.C.P. 402 states the following:

(a) Original process may be served

(1) by handing a copy to the defendant; or

(2) by handing a copy

(i) at the residence of the defendant to an adult member of the family with whom he resides; but if no adult member of the family is found, then to an adult person in charge of such residence; or

(ii) at the residence of the defendant to the clerk or manager of the hotel, inn, apartment house, boarding house or other place of lodging at which he resides; or

(iii) at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof.

Philadelphia County.[4] However, Ms. Gilfor contends that venue properly lies against Dr. Altman, individually, in Philadelphia County because he regularly conducted business in Philadelphia County. We conclude that Ms. Gilfor has confused the rules set forth in Pa.R.C.P. 1006(a) and Pa.R.C.P. 2179.

¶ 11 The rule that venue lies against a defendant because of the defendant's regular conduct of business in a county applies to corporations and other similar entities, but such rule does not apply to individuals. *See* Pa.R.C.P. 2179. As explained previously, venue against an individual lies where the individual can be served or the cause of action arose. An individual may be served in any county where he is personally present and a copy of the original process is handed to him, where he resides, or at any office/usual place of business. *See* Pa.R.C.P. 402. Ms. Gilfor has failed to cite any law, and our research does not disclose any law, permitting an individual to be served in a county *merely* because he may conduct some business in that county.[5] As such, the trial court did not err in concluding that venue did not lie in Philadelphia County as to Dr. Altman, individually.

¶ 12 With regard to Brian Altman, P.C., venue is governed primarily by Pa.R.C.P. 2179, which provides that venue lies in the county where the corporation is registered, a county in which the corporation's principal place of business is located, a county where the corporation regularly conducts business, a county where the cause of action arose, or a county where a transaction or occurrence took place out of which the cause of action arose. Here, Ms. Gilfor's only contention under Pa. R.C.P. 2179 is that the corporation, through Dr. Altman, regularly conducted business in Philadelphia County, and, therefore, venue properly lies in Philadelphia County.

In determining where a corporation 'regularly conducts business,' this Court must focus on the nature of the acts the corporation allegedly performs in that county; those acts must be assessed both as to their quantity and quality.

'Quality of acts' means 'those directly furthering or essential to, corporate objects; they do not include incidental acts.' Quantity means those acts which are 'so continuous and sufficient to be general or habitual.' ... [T]he acts of the corporation must be distinguished: those in 'aid of a main purpose' are collateral and incidental while 'those necessary to its existence' are 'direct.'

*Masel*, 689 A.2d at 317 (citations and quotation omitted).

¶ 13 To support her argument, Ms. Gilfor points to Dr. Altman's curriculum vitae and the Dorland's Medical Directory, portions of which are contained in the certified record. Dr. Altman's curriculum vitae provides that, during the relevant time period, Dr. Altman was an instructor for Temple University's Department of Pediatrics and Department of Ophthalmology, and he was a consultant in pediatrics for St. Christopher's Hospital for Children.[6] Dorland's Medical Directory lists

---

4. In an affidavit attached to the preliminary objections, Dr. Altman swore that he is a resident of New Jersey and that his current office is located in Ocean City, New Jersey. His office, during Nicholas' surgery and treatment, was located in Montgomery County.

5. We acknowledge that an individual may be served personally while he is present in a county; however, such did not happen in Philadelphia County in this case.

6. Ms. Gilfor contends that the fact Dr. Altman had staff privilege at the Will's Eye Hospital's pediatric ophthalmology department also

Dr. Altman's affiliations as Abington, Holy Redeemer Hospital and Medical Center, Montgomery Hospital, St. Christopher's Hospital for Children, Wills Eye Hospital, Burdette Tomlin Memorial Hospital, and Allegheny University Hospitals–Bucks County Division.

¶ 14 With regard to the hospitals listed in Dr. Altman's curriculum vitae, we conclude that the hospitals do not fulfill the requirement that Brian Altman, P.C., regularly conducted business in Philadelphia County. Dr. Altman's teaching position at Temple University did not directly further, and was not essential to, the corporation's object. *See Purcell v. Bryn Mawr Hospital,* 525 Pa. 237, 579 A.2d 1282 (1990) (holding that corporation who recruited medical residents from Philadelphia hospitals did not establish sufficient contact with Philadelphia since the relationship was educational in nature). Also, the fact Dr. Altman was a consultant for St. Christopher's Hospital for Children does not support Ms. Gilfor's position in this case. The curriculum vitae notes that Dr. Altman is a consultant, but no other information is provided. That is, Ms. Gilfor has provided us with no information concerning the nature of Dr. Altman's consulting work, including whether he receives compensation or otherwise furthers the goals of Brian Altman, P.C.

¶ 15 With regard to the hospitals listed in Dorland's Medical Directory, Abington, Holy Redeemer Hospital and Medical Center, and Montgomery Hospital are located in Montgomery County; the Burdette Tomlin Memorial Hospital is located in Cape May County, New Jersey; and Allegheny University Hospitals–Bucks County Division is located in Bucks County. St. Christopher's Hospital for Children and

Wills Eye Hospital are located in Philadelphia County. However, as indicated previously, Dr. Altman's affiliations with St. Christopher's Hospital for Children and Wills Eye Hospital do not provide the contacts required to establish venue in Philadelphia County.

¶ 16 For all of the foregoing reasons, we affirm the trial court's order transferring venue from Philadelphia County to Montgomery County.

¶ 17 Affirmed.

proves he had sufficient contacts with Philadelphia County. However, Dr. Altman ended his membership with the Will's Eye Hospital

in 1998, prior to the filing/service of Ms. Gilfor's complaint.